OPINION
{¶ 1} Plaintiff-appellant, Delores Johnson, appeals from the judgment of the Franklin County Court of Common Pleas dismissing her original and supplemental complaints filed on July 23, 2004 and August 19, 2004, respectively, and denying her mandamus relief.
 {¶ 2} Appellant obtained an Ohio license to practice nursing. Defendantappellee, the Ohio Board of Nursing ("Board"), initiated disciplinary proceedings against appellant regarding her license. On January 16, 2004, the Board issued to appellant a Notice of Opportunity for Hearing, which listed allegations relating to appellant's nursing practice in providing home nursing care to a female child and set a hearing on the matter for August 2004.
 {¶ 3} At a July 2004 meeting, the Board dismissed the January notice and issued a new Notice of Opportunity for Hearing. The July notice removed and modified allegations that the Board set forth in the January notice.
 {¶ 4} Subsequently, on July 23, 2004, appellant filed a civil complaint against the Board and defendants-appellees, Lisa Ferguson-Ramos, an attorney and Board compliance manager; John Brion, Board executive director; and Betty Jo Horste, Board compliance officer. Appellant filed against Ferguson-Ramos, Brion, and Horste in their official and individual capacities.
 {¶ 5} In the complaint, appellant alleged federal claims under Section 1983, Title 42, U.S.Code: (1) due process and personal liberty violations, Count 1; (2) equal protection violations, Count 8; (3) fraudulent conduct in violation of Section 1001, Title 18, U.S. Code, Count 12; and (4) constitutional right to privacy and confidentiality, Count 14. Appellant also filed a federal conspiracy claim under Section 1985(3), Title 42, U.S. Code in Count 13.
 {¶ 6} Further, appellant also alleged non-federal claims: (1) discovery abuse under Civ.R. 26, Count 2; (2) defamation under R.C.2739.03, Count 3; (3) defamation under R.C. 2739.01, Count 4; (4) emotional distress and pain and suffering, Count 5; (5) malicious intent to defame under R.C. 2739.01, Count 6; (6) lack of confidentiality in violation of R.C. 4723.28, Count 7; (7) criminal coercion in violation of R.C. 2905.12, Count 9; (8) abuse of power, Count 10; (9) violation of the code of professional responsibility that governs attorneys, Count 11; (10) common-law conspiracy, Count 13; (11) failure to hold a hearing prior to a license expiration in accordance with R.C. 119.091, Count 15; (12) abuse of discretion, Count 16; (13) acts not within the scope of an agent's employment, Count 17; (14) loss of employment, income and severe reversal of fortune, Count 18; and (15) loss of reputation, Count 19.
 {¶ 7} Appellant's federal right to privacy claim, parts of the non-federal coercion and professional responsibility violation claims, and all of the non-federal defamation, lack of confidentiality, and loss of employment and reputation claims stemmed from: (1) appellant's employer terminating her employment after Ferguson-Ramos informed the employer about the pending disciplinary hearing and faxed to the employer the allegations against appellant; and (2) Ferguson-Ramos providing information on the allegations and a copy of the January hearing notice to individuals involved in a juvenile court proceeding. In her other claims, appellant challenged the disciplinary proceedings against her. Appellant generally asserted that the proceedings commenced after an improper and unjustified investigation, and that the proceedings did not conform to her constitutional due process rights or statutes governing the disciplinary process. Further, appellant alleged that the disciplinary proceedings arose from appellees' abuse of discretion and discriminatory, conspiratorial action. Lastly, appellant specified no allegations against Brion and Horste.
 {¶ 8} In bringing action against appellees, appellant sought monetary and injunctive relief. Through injunctive relief, appellant requested an order for appellees to take a "Minority Cultural Sensitivity Course" and a "Course on Constitutional Due Process, Privacy Laws, and Civil Rights Laws." Appellant also asked the trial court to order all involved parties to "stop acting conspiratorial" and to order the Board "to do their job in regards to the first child client in question." Likewise, appellant sought a declaratory judgment "that the practices of [appellees] violated the substantive and procedural due process, constitutionally protected and statutory rights of [appellant]." Lastly, appellant requested a writ of mandamus to "correct any abuse of discretion in administrative proceedings."
 {¶ 9} On July 27, 2004, appellant filed a related motion for a writ of mandamus asking the trial court to compel appellees to "follow rule 119.091 regarding [her] Fifteenth Cause of Action."
 {¶ 10} On August 19, 2004, appellant moved for "leave to file supplemental complaint." Appellant sought to supplement the original complaint with two additional counts. In Count 20, appellant reiterated that she sustained loss of employment, income, and a severe reversal of fortune. In Count 21, appellant reiterated her confidentiality claim.
 {¶ 11} In the course of her litigation, appellant also filed other miscellaneous motions. Appellees filed motions to dismiss appellant's original and supplemental complaints.
 {¶ 12} On October 6, 2004, the trial court granted appellees' motions to dismiss the original and supplemental complaints, and denied appellant's request for mandamus relief. In rendering its decision, the trial court noted that it considered all miscellaneous motions and memoranda that both parties submitted.
 {¶ 13} Appellant appeals, raising four assignments of error:
[1.] The Trial Court misconstrued this complaint and did not note that it is a complaint regarding loss of employment, malicious prosecution, etc . . . prior to plaintiff having a hearing; hence dismissal entry of October 6, 2004 is in error.
[2.] Exhaustion of administrative and judicial state remedies is not a prerequisite to a section 1983 action. Also, the existence of concurrent state remedies is not a bar to a section 1983 action.
[3.] Section 1983 allows State Officer's to be sued in their individual and official capacity in Common Pleas Court for Constitutional Due Process Violations.
[4.] ORC 119.06(4) says Mandamus is available to correct any abuse of discretion in administrative proceedings.
 {¶ 14} First, we note that, on December 16, 2004, we granted appellant's motion to dismiss her appeal against the Board. Appellant sought the dismissal because she was filing a complaint against the Board in the Ohio Court of Claims. In light of the dismissal, we will not review the trial court's decision as it relates to the state agency, but will address the appeal as it relates to Ferguson-Ramos, Brion, and Horste.
 {¶ 15} We begin with appellant's fourth assignment of error. In her fourth assignment of error, appellant contends that the trial court erred by denying her mandamus relief. We disagree.
 {¶ 16} To be entitled to mandamus relief, the relator must demonstrate that: (1) there is a clear legal right to the relief requested; (2) the respondent is under a clear legal duty to perform the requested act; and (3) there is no adequate remedy in the ordinary course of law. State exrel. Stafford v. Indus. Comm. (1989), 47 Ohio St.3d 76, 77-78; State exrel. Ohio Civ. Serv. Employees Assn., AFSCME, Local 11, AFL-CIO v. StateEmp. Relations Bd., 104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 9.
 {¶ 17} In seeking mandamus relief, appellant asked the trial court to compel appellees to "follow rule 119.091 regarding my Fifteenth Cause of Action." R.C. 119.091 states:
The failure of any agency to hold an adjudication hearing before the expiration of a license shall not terminate the request for a hearing and shall not invalidate any order entered by the agency after holding the hearing. If during or after such hearing but before the issuance of an order the existing license shall expire[,] the adjudicatory agency shall in its order in favor of the affected party provide that the licensing authority shall renew the license upon payment of the fee prescribed by law for the renewal of the license.
 {¶ 18} Here, appellant asserted that her license was to expire in August 2004, the month that the Board scheduled the disciplinary hearing. Thus, according to appellant, R.C. 119.091 required the Board to allow her to renew her license while disciplinary proceedings occurred.
 {¶ 19} However, R.C. 4723.28(B) provides that only by a vote of a quorum may the Board act on a license subject to discipline. Ferguson-Ramos, Brion, and Horste have no unilateral authority to act on appellant's license during the disciplinary proceedings. Therefore, appellees had no "clear legal duty" to perform appellant's requested act in relation to R.C. 119.091. See Stafford at 77-78; State Emp. RelationsBd. at ¶ 9.
 {¶ 20} Because only the Board could provide the requested relief, and appellant has dismissed her appeal as to the Board, we overrule appellant's fourth assignment of error.
 {¶ 21} We next address together appellant's first, second, and third assignments of error because they concern the trial court's decision to dismiss her original and supplemental complaints. In these assignments of error, appellant contends that the trial court erred by dismissing her complaints. Again, we disagree.
 {¶ 22} We first consider the ripeness doctrine's applicability to appellant's original and supplemental complaints. Ripeness is "a question of timing." State ex rel. Elyria Foundry Co. v. Indus. Comm. (1998),82 Ohio St.3d 88, 89, quoting Regional Rail Reorganization Act Cases
(1974), 419 U.S. 102, 140. The ripeness doctrine seeks to prevent courts from engaging in premature adjudication. Elyria Foundry Co. at 89. Such premature claims are not "justiciable," and the trial court lacks jurisdiction to review them. Stewart v. Stewart (1999),134 Ohio App.3d 556, 558, quoting Section 4(B), Article IV, Ohio Constitution.
 {¶ 23} In determining whether a controversy is ripe, we analyze: (1) whether delayed review would cause hardship to the plaintiff; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the applicable court would benefit from further factual development of the issues. Ohio Forestry Assn.,Inc. v. Sierra Club (1998), 523 U.S. 726, 733; Stewart at 558.
 {¶ 24} In Bigelsen v. Arizona Bd. of Med. Examiners (D.Ariz. 1985), No. CIV 84-1014, an Arizona doctor filed a civil suit against the medical board. The civil suit included federal antitrust and civil rights claims and arose after the board initiated disciplinary proceedings against the doctor. The trial court dismissed all allegations regarding the ongoing disciplinary proceedings as premature and not ripe for adjudication.
 {¶ 25} Here, like Bigelsen, appellant's claims concerning the disciplinary proceedings were not ripe for the trial court's adjudication. The proceedings were still taking place when appellant filed her complaints, and nothing in the record indicates that appellees had rendered a final disciplinary decision against appellant when the trial court issued its October 6, 2004 dismissal. Accordingly, the allegations concerning the disciplinary proceedings evoked the factors inOhio Forestry Assn., Inc. First, the allegations lacked sufficient factual development because the proceedings were ongoing. See OhioForestry Assn., Inc. at 733; Stewart at 558. Second, the trial court's intervention would have inappropriately interfered with the ongoing proceedings, given that the Board had taken no final action against appellant and could have ultimately made a decision that rendered moot appellant's claims. See Ohio Forestry Assn., Inc. at 733; Stewart at 558. Likewise, because the Board had taken no final action against appellant and could have rendered moot appellant's claims, the trial court was not required to interfere with the proceedings despite hardship that appellant claimed she sustained from the proceedings. See Ohio ForestryAssn., Inc. at 733; Stewart at 558.
 {¶ 26} As an example, appellant alleged due process violations in Count 1, in part, from Ferguson-Ramos' "[s]ystemic abuses of discretion, malicious prosecution, and prosecutorial overreaching" during the disciplinary proceedings. In other counts, as noted above, appellant alleged similar issues attacking the ongoing disciplinary proceedings. However, the trial court had nothing concrete to decide with these issues because the disciplinary proceedings were still evolving and, as a result, so were the nature of appellant's allegations.
 {¶ 27} We further conclude that our utilizing the ripeness doctrine does not implicate the exhaustion of administrative remedies doctrine, which appellant correctly asserts is inapplicable to her Section 1983 claims pursuant to Gibney v. Toledo Bd. of Edn. (1988), 40 Ohio St.3d 152,153. These two doctrines "are distinct and not interchangeable." UnitedStates ex rel. Ricketts v. Lightcap (C.A.3, 1977), 567 F.2d 1226, 1232;Mercado v. Perez Vega (D.Puerto Rico 1993), 853 F.Supp. 42, 45; see, also, Roll v. Edwards, 156 Ohio App.3d 227, 2004-Ohio-767, at ¶ 27
(applying the ripeness doctrine, not the exhaustion of remedies doctrine, as the issue applicable to the facts and circumstances presented).
 {¶ 28} The exhaustion of administrative remedies doctrine requires a person to exhaust available statutory administrative remedies before seeking redress from the judicial system. Basic Distrib. Corp. v. OhioDept. of Taxation (2002), 94 Ohio St.3d 287, 290. As we already indicated, "[r]ipeness concerns whether the legal issue at the time presented in a court is sufficiently concrete for decision." Lightcap at 1232.
 {¶ 29} Hence, ripeness on a plaintiff's claim may occur before he or she exhausts administrative remedies if the claim becomes "sufficiently concrete for decision." See Lightcap at 1232. Thus, although the exhaustion of remedies doctrine does not apply to Section 1983 claims, the ripeness doctrine does. See Lightcap at 1232-1233.
 {¶ 30} Furthermore, we may evoke the ripeness doctrine even though the trial court dismissed appellant's complaints on other grounds. SeeStewart at 558 (holding that an appellate court may sua sponte address "justiciability" issues).
 {¶ 31} But even if we were to find that appellant's claims were ripe for review, we conclude that other reasons warranted the trial court to dismiss appellant's original and supplemental complaints. In particular, we recognize that neither the original nor supplemental complaint stated allegations against Brion and Horste. Appellant asserted her allegations against these individuals for the first time in reply to appellees' motion to dismiss, but appellant did not seek leave to add the allegations to her original or supplemental complaint pursuant to Civ.R. 15.
 {¶ 32} Civ.R. 12(B)(6) authorizes a trial court to grant a dismissal for a plaintiff's failure to state a claim upon which relief may be granted. Here, pursuant to Civ.R. 12(B)(6), the trial court properly dismissed appellant's action against Brion and Horste because the original and supplemental complaints failed to assert any claims against these individuals.
 {¶ 33} As to Ferguson-Ramos, we conclude, as appellees assert, that the trial court lacked jurisdiction over appellant's non-federal claims for monetary relief. Under R.C. 9.86, state employees are not liable:
* * * [I]n any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 34} The Court of Claims has "original, exclusive jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action." R.C.2743.02(F).
 {¶ 35} Pursuant to R.C. 9.86 and 2743.02(F), if the Court of Claims "determines that the employee was acting within the scope of employment, in furtherance of the interests of the state, the state has agreed to accept responsibility for the employee's acts." Conley v. Shearer
(1992), 64 Ohio St.3d 284, 287. "In that event, only the state is subject to suit, and the litigation must be pursued" in the Court of Claims. Conversely, if the Court of Claims "determines that the employee's acts did not further the interests of the state, i.e., the employee was acting outside the scope of his employment, maliciously, in bad faith, or in a wanton or reckless manner, the state has not agreed to accept responsibility for the employee's acts and the employee is personally answerable for his acts in a court of common pleas." Id.
 {¶ 36} Consequently, under the immunity provisions, the common pleas court lacks jurisdiction until the Court of Claims initially determines that the employee is not immune under R.C. 9.86 and that the common pleas court has jurisdiction. Conley at 287-288. Here, R.C. 9.86 and 2743.02(F) apply to appellant's non-federal monetary claims because the Ohio Supreme Court has held that the immunity provisions do not apply to federal Section 1983 or 1985(3) claims. Conley at 292-293. Thus, Conley required appellant to first file the non-federal claims for monetary relief in the Court of Claims to allow the court to determine whether Ferguson-Ramos is immune under R.C. 9.86 and whether the common pleas court had jurisdiction. See Conley at 287-288. Appellant failed to do so, and the trial court lacked jurisdiction over the claims.
 {¶ 37} When the common pleas court lacks jurisdiction under circumstances such as these, it may dismiss the action under Civ.R. 12(B)(1), which authorizes a trial court to dismiss claims for lack of jurisdiction over the subject matter. Suver v. Morris (Jan. 8, 1991), Franklin App. No. 90AP-898; Hamilton v. Wilkinson, Franklin App. No. 04AP-502, 2004-Ohio-6982, at ¶ 7. The dismissal is "an adjudication other than on the merits" pursuant to Civ.R. 41(B)(4). Suver.
Alternatively, the trial court may stay the proceedings pending the Court of Claims' immunity determination. Walker v. Steinbacher (1987),37 Ohio App.3d 1, syllabus; Narduzzi v. Looby (Nov. 6, 1989), Mahoning App. No. 89 C.A. 3.
 {¶ 38} At oral argument, appellant contended that the trial court should not have dismissed her non-federal monetary claims, but should have stayed her proceeding to allow her to seek an immunity determination in the Court of Claims. Appellant failed to raise this issue in her appellate brief and, therefore, we are not compelled to address it. App.R. 12(A)(2); State v. Shaw (Sept. 23, 1999), Franklin App. No. 98AP-1338. Nonetheless, we recognize that appellant did not move the trial court to stay her action pending an immunity determination. Thus, the trial court had no occasion to respond to a stay request, and Civ.R. 12(B)(1) ultimately gave the trial court authority to dismiss for lack of subject-matter jurisdiction appellant's non-federal monetary claims.Suver; Wilkinson at ¶ 7.
 {¶ 39} In so concluding, we note that neither party addressed R.C.2743.02 and 9.86 in relation to appellant's non-federal claims for injunctive and declaratory relief. We previously concluded that a plaintiff's claim for injunctive and declaratory relief against the state and its employees belonged in the court of common pleas because the plaintiff did not seek monetary relief under state law against the state employees. Midwest Pride IV, Inc. v. Wray (Nov. 3, 1992), Franklin App. No. 92AP-627. However, we make no final disposition on the issue, pursuant to App.R. 12(A)(2), because neither party raised it on appeal.
 {¶ 40} We next turn to appellant's federal Section 1983 claims. Again, appellant raised the following federal claims through Section 1983: (1) due process and personal liberty violations, Count 1; (2) equal protection violations, Count 8; (3) fraudulent conduct in violation of Section 1001, Title 18, U.S. Code, Count 12; and (4) constitutional right to privacy and confidentiality, Count 14.
 {¶ 41} Section 1983 provides, in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured * * *.
 {¶ 42} A plaintiff may bring Section 1983 claims against state employees in their official capacities for prospective injunctive relief. Will v. Michigan Dept. of State Police (1989), 491 U.S. 58, 71, fn. 10. Here, appellant alleged claims against Ferguson-Ramos in her official capacity for prospective injunctive relief, e.g., "[a]n order for [Ferguson-Ramos] to take Minority Cultural Sensitivity Course" and to take "[a] Course on Constitutional Due Process, Privacy Laws, and Civil Rights Laws."
 {¶ 43} A plaintiff may also bring Section 1983 claims against state employees in their individual capacities for monetary relief. Hafer v.Melo (1991), 502 U.S. 21, 30-31. Here, appellant also sued Ferguson-Ramos in her individual capacity for monetary relief.
 {¶ 44} However, Civ.R. 12(B)(6) supports the trial court's dismissal on the Section 1983 claims because appellant failed to state claims upon which relief may be granted. Civ.R. 12(B)(6) tests the sufficiency of a plaintiff's complaint. State ex rel. Hanson v. Guernsey Cty. Bd. ofCommrs. (1992), 65 Ohio St.3d 545, 548. Specifically, Civ.R. 12(B)(6) tests whether the allegations contained in the complaint are legally sufficient to state a claim. Kramer v. Installations Unlimited, Inc.,147 Ohio App.3d 350, 2002-Ohio-1844, at ¶ 8.
 {¶ 45} Initially, we conclude that appellant's due process claim in Count 1 failed to state a claim upon which relief may be granted to the extent that it referred to appellant's right to notice and an opportunity for a hearing on the disciplinary proceedings. Appellant admitted in her original complaint that she received a revised notice of allegations against her and that she had a hearing date scheduled for August 2004. In this regard, appellant failed to allege a violation of her due process rights in Count 1.
 {¶ 46} On appeal, appellant contends that her due process claims also extend to: (1) Ferguson-Ramos withholding favorable evidence, as alleged in Count 2; (2) Ferguson-Ramos defaming appellant, as alleged in Counts 3, 4, and 6; (3) Ferguson-Ramos' failure to comply with investigative confidentiality provisions in violation of R.C. 4723.28, as alleged in Count 7; (4) Ferguson-Ramos abusing her power, as alleged in Count 10; (5) Ferguson-Ramos violating attorney disciplinary codes, as alleged in Count 11; (6) Ferguson-Ramos acting outside the scope of her employment, as alleged in Count 17; and (7) appellant losing her employment, as alleged in Counts 18 and 20. However, appellant's argument is disingenuous, given that she listed the above claims under counts, captions, and theories of law separate and distinct from her due process claim in Count 1. A party cannot raise a constitutional question on appeal without raising the issue to the trial court. State ex rel. Spechtv. Bd. of Edn. (1981), 66 Ohio St.2d 178, 182. Accordingly, appellant cannot now raise the above allegations as due process violations, and we will not address them as such pursuant to Specht.
 {¶ 47} Next, appellant alleged equal protection violations in Count 8 pertaining to racial discrimination. In response, appellees assert that appellant failed to allege facts showing a prima facie case of racial discrimination. A plaintiff asserting a federal constitutional equal protection claim for an employment-related case under Section 1983 must prove the same elements required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964. Perry v. McGinnis
(C.A.6, 2000), 209 F.3d 597, 601, citing Gutzwiller v. Fenik (C.A.6, 1988), 860 F.2d 1317, 1325. In such a case, a plaintiff bears the burden of establishing a prima facie case of discrimination by demonstrating: (1) membership in a protected class; (2) qualification for the employment in question; (3) an adverse employment action; and (4) different treatment of the plaintiff for the same or similar conduct of similarly situated non-protected employees. Perry at 601.
 {¶ 48} However, the above prima facie burden establishes an evidentiary standard, not a pleading standard. Coryell v. Bank One TrustCo. N.A., 101 Ohio St.3d 175, 2004-Ohio-723, at ¶ 25, citingSwierkiewicz v. Sorema, N.A. (2002), 534 U.S. 506. Thus, a plaintiff need not establish a prima facie case of discrimination to survive a Civ.R. 12(B)(6) motion to dismiss. See Coryell at ¶ 25. Rather, the plaintiff must comply with Civ.R. 8(A) pleading requirements. Id.
 {¶ 49} Under Civ.R. 8(A), a plaintiff's complaint need only contain, in pertinent part, "a short and plain statement of the claim showing that the party is entitled to relief." Thus, Civ.R. 8(A) does not require a plaintiff to plead facts with particularity. Cincinnati v. Beretta U.S.A.Corp., 95 Ohio St.3d 416, 2002-Ohio-2480, at ¶ 29. Rather, "`as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" Cincinnati at ¶ 29, quoting York v.Ohio State Hwy. Patrol (1991), 60 Ohio St.3d 143, 145. Nonetheless, even under Civ.R. 8(A), the complaint must "concisely set forth * * * those operative facts sufficient to give `fair notice of the nature of the action.'" Welch v. Finlay Fine Jewelry Corp. (Feb. 12, 2002), Franklin App. No. 01AP-508, quoting DeVore v. Mut. of Omaha (1972),32 Ohio App.2d 36, 38. Otherwise, the plaintiff fails to state a claim upon which relief may be granted, pursuant to Civ.R. 12(B)(6), because the plaintiff failed to plead "operative grounds creating the claim." Marsalis v. Wilson, 149 Ohio App.3d 637, 2002-Ohio-5534, at ¶2, citing Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190.
 {¶ 50} Here, appellant alleged in Count 8 that Ferguson-Ramos subjected her to racial discrimination, but failed to provide operative facts such as her race or the nature of the discrimination. Although appellant asserted in her memorandum against appellees' motion to dismiss that she is African-American, appellant did not seek leave to add this operative fact to Count 8 pursuant to Civ.R. 15. Thus, without this or any other operative facts, appellant's original and supplemental complaints failed to provide "fair notice" of the racial discrimination claim, under the dictates of Civ.R. 8(A). As such, appellant's Count 8 failed to state a claim upon which relief may be granted pursuant to Civ.R. 12(B)(6).Marsalis at ¶ 2.
 {¶ 51} In Count 12, appellant claimed that Ferguson-Ramos violated Section 1001, a federal criminal statute that generally prohibits individuals "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" from knowingly and willfully concealing material facts or committing fraud.
 {¶ 52} As noted above, appellant evoked the Section 1001 claim under Section 1983. In order to seek redress through Section 1983, a plaintiff must assert the violation of a federal right, not merely a violation of a federal law. Blessing v. Freestone (1997), 520 U.S. 329, 340. A federal statute provides no basis for a private suit under Section 1983 if the statute contains no indication that Congress intended to create an individual right. Gonzaga Univ. v. Doe (2002), 536 U.S. 273, 286.
 {¶ 53} Here, Section 1001 is a federal criminal statute that denotes no indication that Congress intended to furnish civil remedies through an individual right. Federal Sav. and Loan Ins. Corp. v. Reeves (C.A.4, 1987), 816 F.2d 130, 138. Rather, "Congress envisioned the statute solely in criminal terms." Id. Accordingly, no private right of action stems from Section 1001. Reeves at 137-138; Williams v. McCausland (S.D.N.Y. 1992), 791 F.Supp. 992, 1001.
 {¶ 54} Section 1001 is also inapplicable because the statute pertains to the federal government and appellant's complaint detailed no connection to the federal government. Accordingly, pursuant to Civ.R. 12(B)(6), we conclude that appellant failed to state a claim upon which relief may be granted in Count 12.
 {¶ 55} In Count 14, appellant contended that Ferguson-Ramos violated her federal constitutional right to privacy. Appellant based the privacy claim on Ferguson-Ramos telling appellant's employer about the disciplinary hearing and faxing to the employer the allegations against appellant. Appellant also based the claim on Ferguson-Ramos providing information on the disciplinary hearing and allegations to individuals involved in a juvenile court matter.
 {¶ 56} The federal constitution specifies no general right to privacy. Ohio State Med. Bd. v. Shearer (May 21, 1999), Franklin App. No. 90AP-858. The privacy right stems from specific constitutional guarantees. Paul v. Davis (1976), 424 U.S. 693, 712-713. "[T]he personal rights found in this guarantee of personal privacy must be limited to those which are `fundamental' or `implicit in the concept of ordered liberty.'" Id.
 {¶ 57} The United States Supreme Court has recognized that the federal constitutional privacy right protects two narrowly drawn types of interests. One interest concerns independence in making certain kinds of important decisions. Whalen v. Roe (1977), 429 U.S. 589, 599-600. Such decisions concern "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education."Paul at 713. Appellant's claim does not fall under such specific matters.
 {¶ 58} Second, the federal constitutional privacy right protects against the government disclosing highly personal information. Whalen at 599. Such constitutionally protected personal information depends, in part, upon the intimate, personal nature of the material that the government possesses. Bloch v. Ribar (C.A.6, 1998), 156 F.3d 673, 685, quoting Mangels v. Pena (C.A.10, 1986), 789 F.2d 836, 839. As an example, the federal constitutional privacy right prohibits the government from releasing to the public an individual's social security number. State ex rel. Beacon Journal Publishing Co. v. Akron (1994),70 Ohio St.3d 605, 607. Likewise, the privacy right prohibits the government from releasing law enforcement officers' home addresses, telephone numbers, medical information, and the names of the officers' children, spouses, parents, and beneficiaries. State ex rel. Keller v.Cox (1999), 85 Ohio St.3d 279, 282. Conversely, the federal constitutional privacy right does not protect against the government publicizing "an official act such as an arrest." Paul at 713.
 {¶ 59} Here, like Paul, Ferguson-Ramos' disseminating information on disciplinary proceedings and allegations against appellant is akin to the publicizing of a governmental "official act" against an individual. Thus, like Paul and unlike Akron and Cox, appellant's Count 14 does not involve one of the limited circumstances that the federal constitutional privacy right protects. As such, Count 14 failed to state a claim upon which relief may be granted pursuant to Civ.R. 12(B)(6).
 {¶ 60} We recognize that the trial court did not dismiss appellant's Section 1983 claims under the rationale noted above, but, instead, concluded that a plaintiff cannot bring Section 1983 claims against a state agency. The trial court's statement is erroneous because a plaintiff may bring Section 1983 claims against state employees: (1) in their official capacities for prospective injunctive relief; and (2) in their individual capacities for monetary relief. Will at 71, fn. 10;Hafer at 30-31.
 {¶ 61} Nonetheless, we have no authority to reverse a correct judgment on the basis that some or all of the trial court's reasons are erroneous. State ex rel. McGrath v. Ohio Adult Parole Auth.,100 Ohio St.3d 72, 2003-Ohio 5062, at ¶ 8. Here, the trial court correctly dismissed appellant's Section 1983 claims, and we cannot reverse the decision solely because we find erroneous the trial court's reasons for the dismissal. Id.
 {¶ 62} Lastly, we address appellant's Section 1985(3) federal conspiracy claim in Count 13. The trial court did not discuss Section 1985(3) in its judgment entry, but effectively dismissed Count 13 when it dismissed appellant's original and supplemental complaints in their entirety.
 {¶ 63} Section 1985(3) provides a private civil remedy for individuals injured by conspiracies to deprive them of their right to equal protection under the laws. Roe v. Franklin Cty. (1996),109 Ohio App.3d 772, 781, citing de Botton v. Marple Twp. (E.D.Pa. 1988), 689 F.Supp. 477, 482. The Section 1985(3) claim stems from a conspiracy that: (1) interferes with a United States citizen's right or privilege; and (2) is motivated by a racial or "other class-based, invidiously discriminatory animus." Franklin Cty. at 781.
 {¶ 64} Here, appellant provided no operative facts in the original and supplemental complaints to denote a racial discrimination conspiracy under Section 1985(3). She merely made a vague assertion that Ferguson-Ramos was punishing her through "administrative lynching." Accordingly, appellant's original and supplemental complaints failed to provide "fair notice" of the federal conspiracy claim under the dictates of Civ.R. 8(A). Therefore, pursuant to Civ.R. 12(B)(6), we conclude that appellant failed to state a claim upon which relief may be granted in Count 13.
 {¶ 65} Based on the above, even if appellant's claims were ripe for review, we conclude that the trial court did not err by dismissing appellant's original and supplemental complaints. As such, we overrule appellant's first, second, and third assignments of error.
 {¶ 66} In summary, we overrule appellant's first, second, third, and fourth assignments of error. Therefore, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Klatt, J., concur.