[Cite as *Saqr v. Naji*, 2017-Ohio-8142.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| AMEERA SAQR, | : | APPEAL NO. C-160850 |
| | | TRIAL NO. DV1600130 |
| Petitioner-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| SELIM NAJI, | : | |
| Respondent-Appellant. | : | |


Appeal From: Hamilton County Court of Common Pleas, Domestic Relations
Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 11, 2017

*Cathy Cook*, for Petitioner-Appellee,

*Selim Naji*, pro se.

**ZAYAS, Judge.**

{¶1} Respondent-appellant Selim Naji appeals the trial court's denial of his motion to terminate a domestic violence civil protection order ("CPO"). Because we hold that there was no error in the trial court's decision, we affirm its judgment.

## Background

{¶2} On February 11, 2016, petitioner-appellee Ameera Saqr filed a petition for a CPO against Naji, her then-husband. Saqr sought the CPO following an incident of alleged domestic violence that occurred at the couple's home on February 10, 2016. Saqr also requested protection for the couple's three children. The same day that Saqr filed her petition, the magistrate entered an ex parte CPO against Naji that prevented him from contacting Saqr and the children. The magistrate ordered a full hearing on the CPO, which took place on March 2, 2016. At the full hearing, Saqr played several recordings she had taken with her phone during verbal altercations with Naji. The parties spoke a mixture of English and Arabic in these recordings, and an interpreter translated the Arabic portions.

{¶3} The magistrate issued a "full hearing" CPO on April 11, 2016. The order stated that it would be effective until February 11, 2017, and included extensive factual findings. The CPO also stated that "[t]he parties' minor children are made protected persons under this order."

{¶4} On April 21, 2016, Naji filed objections to the magistrate's decision. On July 21, 2016, Naji filed a supplement to his objections that challenged several of the magistrate's factual findings and argued that the children should not have been made protected parties under the CPO. The trial court held a hearing on Naji's objections the same day.

{¶5} On August 5, 2016, the trial court issued an entry on Naji's objections. In pertinent part, the entry stated: "The Court finds it is against the manifest weight of the evidence to name the minor children * * * as protected persons. * * * The DVCPO with regard to [Saqr] remains in full force and effect." On August 22, 2016, the trial court entered a new "full hearing" CPO that contained exactly the same factual findings as the April 11, 2016 CPO, except that one sentence was struck through: "~~The parties' minor children are made protected persons under this order.~~" The CPO continued to state that it was effective until February 11, 2017, and indicated that it was final and appealable.

{¶6} On August 12, 2016, Naji filed a motion to terminate the CPO. The motion stated, in pertinent part, that "the civil protection order should be terminated due to the Petitioner committing fraud upon the court by playing editted [sic] versions of audio of alleged domestic violence events."

{¶7} On August 25, 2016, the magistrate held a hearing on Naji's motion. Naji argued that the interpreter at the March 2, 2016 hearing had "made a lot of mistake [sic]." Saqr's counsel objected, and the magistrate told Naji, "Now, wait a minute. Those—those are things that you should have raised objections to at the time." Naji also wanted to introduce recordings to demonstrate the discrepancies between what he believed the parties were saying, and what the interpreter believed the parties were saying. The magistrate ordered Naji to transcribe what he believed the content of the recordings to be, and to provide the recordings and his transcripts to Saqr's counsel for review.

{¶8} Later in the hearing, Naji asked the magistrate what he would do if he found out that he had made a decision based on a "fake document." The magistrate responded,

3

Well, for one thing, if I ruled on that document, and it was improper, the ball—it literally is not in my court. The ball is in your court to file an appeal to that. * * * [I]f you were not satisfied with what the judge did in terms of your objections and if he didn't rule on the things properly that you brought up to him, then we have the Court of Appeals. * * * Now if it—if it's something that you didn't bring up on objections, but now you're attacking it collaterally, I don't think that you can do that, because it is what is known as res judicata.

The magistrate informed Naji that he was still within the 30-day window to file a notice of appeal from the trial court's entry on the objections.

{¶9} Naji then asserted that the recordings played during the March 2, 2016 hearing had been "edited and changed" by Saqr. The magistrate responded, "The issues you're raising, Mr. Naji, those are things that are more properly before the Court of Appeals * * *. And I strongly recommend that * * * if you do want to appeal this, that you do so in a timely fashion, because the law only gives you so much time to do it, okay?" The magistrate continued the hearing on Naji's motion until September 16, 2016. Despite the magistrate's warnings, Naji did not appeal the trial court's entry on the objections.

{¶10} When the hearing continued, Naji again contended that Saqr had edited portions from the audio recordings played at the March 2, 2016 hearing. The magistrate told Naji that he had failed to show the relevance of this claim "in terms of * * * what relief you're seeking," i.e., the termination of the CPO:

Assuming for a moment * * * that she * * * edit[ed] out important parts[,] * * * [o]f what use are any of these recordings in support of * * * your motion[]? * * * I'm getting the distinct impression, Mr.

4

Naji, that you're trying to get a second bite at the apple on the underlying facts having to do with * * * the civil protection order against you. * * * All of this should have been presented to [the trial court] on objections. * * * [N]one of that is—certainly is not admissible now, because I've already issued the decision. You've already [filed objections to] it. The judge has issued his ruling.

Naji then stated that he wanted counsel, and the magistrate continued the proceedings until October 3, 2016, so that Naji could obtain counsel.

{¶11} Naji arrived on October 3 without counsel. The magistrate gave him the opportunity to introduce evidence on his motion to terminate the CPO. Ultimately, the magistrate did not allow most of Naji's exhibits into evidence, either because Naji had failed to comply with the magistrate's earlier order that he timely provide the recordings and transcripts to Saqr's counsel, or because Naji was attempting to challenge findings of fact that the trial court had adopted over Naji's objections in its August 22 CPO. The magistrate then interviewed Saqr regarding the statutory factors for considering a motion to terminate a CPO. Saqr stated that she did not consent to the CPO being terminated; that Naji had thus far complied with the terms and conditions of the CPO; that February 10, 2016, was the last incident of alleged abuse; and that she feared that without the CPO, "[h]e'll terrorize me." The magistrate denied Naji's motion.

{¶12} On October 4, 2016, the trial court issued a judgment entry on Naji's motion. The entry, made on Sup.R. Form 10.01-L, stated that the CPO remained in full force and effect. It also did not set a new date for the CPO to terminate, leaving February 11, 2017, as the date of termination. It was stamped "final, appealable order," and contained no notice that Naji needed to file objections prior to filing an

appeal. Naji filed no objections with the trial court, but filed a notice of appeal on November 2, 2016.

## Assignments of Error

{¶13}     Naji asserts two assignments of error. His first is that the trial court erred in denying his motion to terminate the CPO; his second is that the trial court erred by denying him relief from judgment.

## Naji's Failure to File Objections Does Not Forfeit His Appeal

{¶14}     Naji did not file objections to the magistrate's denial of his motion to terminate the CPO, which calls our attention to a recent revision to the Rules of Civil Procedure.

{¶15}     Prior to July 1, 2012, Civ.R. 65.1, which governs the procedures for CPOs, did not exist, and the other Civil Rules governed these procedures. Specifically, Civ.R. 53(D)(3)(a)(iii) provided, then as now, that "[a] magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv) further provided that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶16}     The forms used by the courts of common pleas to issue CPOs,[1] and for decisions on motions to modify or terminate them,[2] do not contain the language that

---

[1] Sup.R. Form 10.01-I
[2] Sup.R. Form 10.01-L

Civ.R. 53(D)(3)(a)(iii) requires.[3] *See, e.g.,* *Larson v. Larson*, 3d Dist. Seneca No. 13-11-25, 2011-Ohio-6013, ¶ 11-14.  However, Sup.R. 10.01 directs the domestic relations divisions of the courts of common pleas to use forms "substantially similar" to these forms.  Courts faced with this dilemma prior to July 1, 2012, held that "if the magistrate fails to provide the parties with the notice pursuant to Civ.R. 53(D)(3)(a)(iii), a party may raise their arguments for the first time on appeal." *Calzo v. Lynch*, 5th Dist. Richland No. 11CA45, 2012-Ohio-1353, ¶ 36. *See Larson* at ¶ 14.

{**¶17**}     This issue became moot once Civ.R. 65.1 came into effect, because that rule originally did not require a party to file objections to a magistrate's decision on a CPO before the party could appeal such a decision, and therefore no notice regarding the filing of objections was required.  Parties could immediately appeal a magistrate's decision on a CPO, or file objections, or both—in which case the appeal would trump the objections and render them moot.  *See Schneider v. Razek*, 2015-Ohio-410, 28 N.E.3d 591, ¶ 32 (8th Dist.).

{**¶18**}     However, on July 1, 2016, during the pendency of this case in the trial court, Civ.R. 65.1(G) was amended to require parties to file objections to a magistrate's decision prior to appealing the decision.  Furthermore, Civ.R. 86(PP) provides that the July 1, 2016 amendments to the Civil Rules "govern * * * all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice."

---

[3] The current versions of both forms were adopted on March 1, 2014, and do not contain Civ.R. 53(D)(3)(a)(iii) language.  The previous versions of the forms, adopted July 1, 2010, also did not contain such language.

**{¶19}** Here, Naji did not file objections to the magistrate's denial of his motion to terminate the CPO, and the strict letter of the Civil Rules required him to do so. However, the form used to issue the decision on Naji's motion, Sup.R. Form 10.01-L, contained no notice that objections must be filed as required by Civ.R. 53(D)(3)(a)(iii). Because the form fails to comply with Civ.R. 53(D)(3)(a)(iii), this case fits into the fact patterns of *Calzo* and *Larson*, and Naji may raise his arguments for the first time on appeal, despite his failure to file objections. *See Walters v. Lewis*, 7th Dist. Mahoning No. 15 MA 0135, 2016-Ohio-1064, ¶ 18.

### Naji's First Assignment of Error Is Moot

**{¶20}** Naji's first assignment of error is that the trial court erred by denying his motion to terminate the CPO. Because the CPO at issue in this case expired on February 11, 2017, we must determine whether this assignment of error is moot. Mootness is a question of justiciability, and "[j]urisdiction and justiciability are threshold considerations in every case, without exception." *Barrow v. New Miami*, 2016-Ohio-340, 58 N.E.3d 532, ¶ 12 (12th Dist.) (identifying standing and ripeness as other justiciability issues). We are "required to raise justiciability sua sponte." *Beadle v. O'Konski-Lewis*, 2016-Ohio-4749, 68 N.E.3d 221, ¶ 10 (6th Dist.), quoting *Stewart v. Stewart*, 134 Ohio App.3d 556, 558, 731 N.E.2d 743 (4th Dist.1999).

**{¶21}** There is currently a conflict among the Ohio appellate districts regarding whether an appeal from an expired civil protection order is moot. *See Cyran v. Cyran*, 148 Ohio St.3d 1408, 2017-Ohio-573, 69 N.E.3d 749 (certified conflict case). The Second, Tenth, and Twelfth Districts have held that such an appeal is moot in most circumstances, while the Third, Fifth, Sixth, Eighth, Ninth, and Eleventh Districts have held that it is not. We have not previously addressed this question.

8

{¶22} At issue is the "collateral consequences" exception to the mootness doctrine, which in criminal cases allows for appeals of moot questions because of the collateral consequences attached to a criminal conviction. The districts that have found that the "collateral consequences" exception applies to an expired CPO have reasoned that it was "reasonably possible that adverse collateral consequences could occur" from the CPO being on a party's record. *See, e.g.*, *Wilder v. Perna*, 174 Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095, ¶ 14-16 (8th Dist.). Potential collateral consequences include "the effect on one's credit rating, the ability to drive certain vehicles, the ability to obtain directors-officers liability insurance, the ability to obtain a weapons permit, the ability to obtain employment, and the filing of the order in a national registry that is enforceable in all 50 states." *Cauwenbergh v. Cauwenbergh*, 11th Dist. Ashtabula No. 2006-A-0008, 2007-Ohio-1070, ¶ 18. There are also potential immigration consequences for those who violate CPOs. *See* 8 U.S.C. 1227(a)(2)(E)(ii).

{¶23} This case is distinguishable from other cases regarding whether an appeal from an expired CPO is moot, however, because this case involves not an appeal from the CPO itself, but rather an appeal from a motion to terminate a CPO. This case is analogous to *Jagow v. Weinstein*, 2d Dist. Montgomery No. 24309, 2011-Ohio-2683. There, the trial court entered a consent agreement CPO on October 5, 2007, that was to remain in force until November 21, 2010. *Id.* at ¶ 2. On June 15, 2009, the respondent filed a motion to terminate the CPO early, and on October 12, 2010, the trial court adopted the magistrate's decision overruling the motion. *Id.* at ¶ 3. The respondent appealed, and the CPO expired while the appeal was pending. *Id.* at ¶ 4-6. The Second District held that the appeal was moot, and further held that the "collateral consequences" exception did not apply because:

9

[Respondent] is not challenging the initial issuance of the consent-agreement protection order per se. Rather, [respondent] is challenging the court's decision not to terminate the order early, before the agreed-to expiration date. Even if his relief requested below had been granted, the pre-existing, but expired, CPO would be a matter of record. Thus, any decision of this court on the issue presented would not eliminate the expired order. Therefore, we determine that there are no potential collateral consequences from the expired order which would be resolved by continuing this appeal.

*Id.* at ¶ 10. In other words, terminating the CPO early would not "void" it, only "end" it, and the CPO would have remained on the respondent's record even if he had been successful on appeal. Therefore, granting respondent the relief he requested would not eliminate any potential collateral consequences. *Compare State v. Howell*, 5th Dist. Stark No. 2001CA00346, 2002-Ohio-3947, ¶ 18 (the collateral consequences exception to the mootness doctrine did not apply where appellant appealed "solely on the issue of the length of his sentence and not on the underlying conviction[,]" because "[i]f an individual has already served his sentence, there is no collateral disability or loss of civil rights that can be remedied by a modification of the length of that sentence in the absence of a reversal of the underlying conviction").

{¶24} Similarly, Naji's first assignment of error challenges the denial of his motion to terminate the CPO, and is therefore moot, because the CPO has already terminated and any potential collateral consequences would not be resolved by sustaining this assignment of error.

10

### *Naji Is Not Entitled to Relief from Judgment*

**{¶25}** Naji's second assignment of error is that the trial court erred by not granting him relief from judgment. At the outset, we note that Naji never explicitly identified his motion to terminate the CPO as a motion for relief from judgment under Civ.R. 60(B), yet he claims that the trial court erred by failing to grant him relief from judgment under that rule. He is essentially asking us to hold that the magistrate erred by failing to construe his motion to terminate the CPO as a request for relief from judgment under Civ.R. 60(B). A review of the record indicates that, while Saqr's counsel at one point referred to Civ.R. 60(B) when discussing Naji's motion, Naji himself never described his motion as requesting relief from judgment, and the magistrate consistently viewed Naji's requested relief as the termination of the CPO.[4]

**{¶26}** Naji's failure to specifically identify his motion as one for relief from judgment is not fatal, however. The general rule is that "[w]hen a motion is ambiguous or unclear, the name given to the motion is not controlling, but instead the substance, not the caption, determines the operative effect of the motion." *Jackson v. Jackson*, 188 Ohio App.3d 493, 2010-Ohio-3531, 935 N.E.2d 937, ¶ 17 (6th Dist.). *See State v. Smith*, 2016-Ohio-3521, 68 N.E.3d 114, ¶ 16 (1st Dist.), quoting *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12 (holding that a court confronted with a motion that does not designate a statute or rule under which relief can be granted "may 'recast' the motion 'in whatever category necessary to identify and establish the criteria by which the motion should be judged' ").

---

[4] It is possible that Naji misconstrued the word "terminate" to mean "void" rather than "end."

{¶27}    However, examining the "substance" of Naji's motion does not immediately indicate that he was requesting relief from judgment.  His motion simply stated that "the civil protection order should be *terminated* due to the Petitioner committing fraud upon the court by playing editted [sic] versions of audio of alleged domestic violence events," and that "the protection [order] was based upon fraudulent evidence."  (Emphasis added.)  A later filing, dated September 8, 2016, contains only a brief reference to "Petitioner committing fraud on the court as alleged my [sic] motion."  Faced only with these sparse statements, the magistrate cannot be faulted for construing the motion as asking for what it literally asked for: the "termination," the "end," of the CPO.  An allegation of fraud does not automatically translate into a request for relief under Civ.R. 60(B).

{¶28}    But even if the trial court had construed Naji's motion as a request for relief under Civ.R. 60(B), Naji would not have been entitled to such relief.  The rule states:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party[.]  * * * The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

{¶29}    This rule is not a substitute for a direct appeal.  As the Seventh District recently stated:

Civ.R. 60(B) involves matters *outside the record* which justify relief from judgment, which cannot be raised on direct appeal because they are outside the record. As such, issues which could have been or were raised in a direct appeal ordinarily are not proper issues to be raised in a motion for relief from judgment; the proper vehicle for correction of claimed errors that could have been supported by transcripts and evidence in the record is through a direct appeal, not a Civ.R. 60(B) motion.

(Emphasis added.) *Ritchie v. Mahoning Cty.*, 2017-Ohio-1213, 80 N.E.3d 560, ¶ 25 (7th Dist.). *See Blount v. Smith*, 8th Dist. Cuyahoga No. 96991, 2012-Ohio-595, ¶ 10.

{¶30} "To succeed on a motion for relief from judgment under Civ.R. 60(B), a movant must establish (1) a meritorious defense or claim to present, in the event that relief from judgment is granted, (2) entitlement to relief under one of the rule's provisions, and (3) compliance with the rule's time requirements." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 11. The moving party must also provide "affidavit quality evidence" to support his or her claim. *Banker's Trust Co. of California, N.A. v. Long*, 5th Dist. Stark No. 2002CA00023, 2002-Ohio-5399, ¶ 11.

{¶31} With regard to a claim of a party's alleged fraud, misrepresentation, or misconduct, relief should be granted only " 'where the court is reasonably well satisfied that the testimony by a material witness is false; that, without it, the trier of fact might have reached a different conclusion; and that the party seeking relief was taken by surprise when false testimony was given and was unable to meet it or did not know of its falsity until after trial.' " *Carpenter v. Johnson*, 196 Ohio App.3d, 2011-Ohio-4867, 962 N.E.2d 377, ¶ 13 (2d Dist.), quoting *Goldshot v. Goldshot*, 2d

Dist. Montgomery No. 19000, 2002 WL 857689, *4 (Apr. 26, 2002). "Absent an abuse of discretion, we will not disturb a trial court's decision to grant or deny a Civ.R. 60(B) motion." *Dye v. Smith*, 189 Ohio App.3d 116, 2010-Ohio-3539, 937 N.E.2d 628, ¶ 12 (4th Dist.), citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶32} Naji claims that Saqr committed fraud on the court by editing the audio played at the initial hearing. However, at no point below did Naji claim that he only became aware of any alleged falsity *after* the trial court had ruled on his objections, that evidence of the alleged fraud was outside of the record, or that the alleged fraud took him by surprise and that he could not meet it. He provided no "affidavit quality evidence," nor did he offer admissible proof of the evidence's falsity. Naji did not offer any evidence as to when he first became aware of the alleged fraud, nor as to what he is claiming Saqr allegedly did to alter the recordings. Nonetheless, Naji himself was one of the participants in the recorded conversations, and was present in the courtroom when the conversations were played at the hearing on March 2, 2016, months before he filed his motion to terminate the CPO.

### Conclusion

{¶33} Naji's first assignment of error is moot, and he failed to establish that he was entitled to relief under his second assignment of error. The trial court did not err in overruling his motion, and we therefore overrule Naji's second assignment of error and affirm the trial court's judgment.

Judgment affirmed.

MOCK, P.J., and MYERS, J., concur.

Please note:

This court has recorded its own entry this date.